IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                          Criminal No. 12-1766-MV

HUSSEIN AL-OMARI,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Hussein Al-Omari's Motion *in Limine* to Limit Testimony of Jordon Trecki, PhD [Doc. 371]. The Government opposed the motion in its entirety [Doc. 376], and Mr. Al-Omari replied in support of his motion [Doc. 379].

The Court, having considered the motions, briefs, relevant law, arguments, and being otherwise fully informed, finds that Mr. Al-Omari's Motion will be **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

This case involves the prosecution of Mr. Al-Omari for the sale of one varietal of synthetic marijuana ("spice"), AM-2201, under the Controlled Substances Act. Doc. 369, Amended Second Superseding Indictment. To help prove its case, the Government retained Dr. Jordan Trecki, PhD, to testify that AM-2201 "has a hallucinogenic effect on the central nervous system that is substantially similar to [that] of JWH-018, a CSA Schedule I cannabinoid

substance." Doc. 312-1, Dr. Trecki Rule 16 Disclosure, at 26. In particular, Dr. Trecki's testimony would help the Government prove that AM-2201 was a controlled substance analog under the Analogue Enforcement Act, a claim that the Government made in a previous indictment that has subsequently been amended. *See* Doc. 359, Joint Motion to Amend Second Superseding Indictment. In a status conference held before the Court on May 11, 2016, the Government stated that even though the Analogue Enforcement Act counts were no longer being pursued, the Government still intended to call Dr. Trecki to explain that "he believes [AM-2201] would have an effect on the human body, it would produce a euphoric or stimulant type of high, and we're not going to compare it to anything else. So it's going to be very restricted testimony." May 11, 2016 Hearing, at 2:30–32 pm. The Government also plans to call Dr. Trecki to testify regarding how a substance becomes scheduled under the Controlled Substances Act. Doc. 376, Opp. to MIL re Dr. Trecki, at 2–3. Given that the Government is no longer pursuing any Analogue Enforcement Act counts from the previous indictment, Mr. Al-Omari brought the present motion to challenge the relevance, cumulativeness, and undue prejudice of Dr. Trecki's testimony. Doc. 371, MIL re Dr. Trecki, at 1.

Mr. Al-Omari argues that the pharmacological effects of AM-2201 are irrelevant to the issues here because Mr. Al-Omari is willing to stipulate that AM-2201 is a "drug" under the Food, Drug, and Cosmetics Act (FDCA) and because he believes the effects of the drug are not relevant in a Controlled Substances Act case. Doc. 371, MIL re Dr. Trecki, at 2–3.[1] Mr. Al-Omari also disputes that Dr. Trecki is qualified to testify regarding the scheduling of a controlled

---

[1] Mr. Al-Omari does not contest that "Dr. Trecki is qualified to give the opinion that AM-2201 would have an effect on the body or its functions if consumed[.]" Doc. 371, MIL re Dr. Trecki, at 3.

2

substance, arguing that Mr. Al-Omari was not given notice of this testimony or provided Dr. Trecki's qualifications in this area. Doc. 371, MIL re Dr. Trecki, at 4.

The Government responds that Dr. Trecki's testimony is relevant because it helps demonstrate that AM-2201 is a "drug" under the FDCA and that the testimony is not unduly prejudicial because the Government has decided not to solicit testimony from Dr. Trecki regarding AM-2201's ability to cause "self-induced lethal trauma or death." Doc. 376, Opp. to MIL re Dr. Trecki, at 3–5. The Government also asserts that Dr. Trecki's testimony regarding the scheduling process is not subject to expert disclosure under Federal Rule of Evidence 702 because his knowledge of the process is personal, and therefore not the subject of expert testimony. Finally, the Government states that it intends to limit Dr. Trecki's testimony to a few subjects:

1. Dr. Trecki's background as a DEA pharmacologist;
2. Dr. Trecki's involvement in the scheduling of substances under the Controlled Substances Act;
3. The scheduling process for substances under the Controlled Substances Act;
4. That AM-2201 became a Schedule I controlled substance on July 9, 2012 as part of the Synthetic Drug Abuse and Prevention Act of 2012;
5. Prior to July 9, 2012, Dr. Trecki was aware that AM-2201 was being used as a designer drug across the United States;
6. Dr. Trecki's experience researching the effects of AM-2201;
7. That AM-2201 may cause convulsions, confusion, and psychiatric complications; and
8. That AM-2201 had this effect before AM-2201 became a controlled substance.

Doc. 376, Opp. to MIL re Dr. Trecki, at 2–3.

## ANALYSIS

### I. Relevance of Dr. Trecki's Testimony Regarding the Effects of AM-2201

The primary issue raised by this motion *in limine* is the relevance of Dr. Trecki's testimony regarding the effects of AM-2201. The Government argues that the testimony is relevant to prove that AM-2201 is a "drug," while Mr. Al-Omari offers to stipulate to that fact in order to avoid prejudicial testimony from being presented to the jury. Doc. 371, MIL re Dr. Trecki, at 2–3; Doc. 376, Opp. to MIL re Dr. Trecki, at 3–5.

#### A. The Defendant's Proposed Stipulation

As a preliminary matter, the Court is not convinced by Mr. Al-Omari's argument that the Government is required to accept Mr. Al-Omari's stipulation that AM-2201 is a "drug." As the Supreme Court articulated in its *Old Chief* decision, the general rule is that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away[.]" 519 U.S. 172, 189 (1997). However, stipulations by a defendant can bind a prosecutor's hands when the alternative would be admitting evidence whose undue prejudice substantially outweighed the discounted[2] probative value of the evidence. *Id.* at 191 ("In this case . . . the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted

---

[2] The proffered stipulation discounts the value of the probative evidence because after a proffered stipulation it can no longer be offered to prove an element of an offense. Instead, it is offered to provide "human significance" to that element for a jury. *Old Chief*, 519 U.S. at 187–88 ("When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment.").

4

probative value of the record of conviction") (emphasis added).  As elaborated in *Old Chief*, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* at 180.  Here, the defendant's willingness to stipulate to the "drug" element of the misbranding charge would assist the Government in proving its case without allowing the Government to introduce evidence that Mr. Al-Omari was a seller of dangerous and illicit substances, information which might persuade a jury to convict Mr. Al-Omari regardless of whether he appropriately branded his products. *See Old Chief*, 519 U.S. at 191.  However, the Court need not decide this issue.  As explained below, the testimony is otherwise relevant to prove the Government's case under the Controlled Substances Act – where the danger and illicitness of AM-2201 is relevant.

       B.   <u>The Relevance of Dr. Trecki's Testimony under the Controlled Substances Act</u>

More important to this Court than the weight of Dr. Trecki's testimony under the Food, Drug, and Cosmetics Act is that testimony regarding the effect of AM-2201 is relevant to Mr. Al-Omari's knowledge that AM-2201 is a controlled substance under Section 841(a)(1) of the Controlled Substances Act. *See McFadden v. United States*, 135 S. Ct. 2298, 2302–03 (2015). On representation from counsel, it appears that Mr. Al-Omari's central defense in this case is that the Government cannot prove that Mr. Al-Omari knew that AM-2201 was a controlled substance beyond a reasonable doubt.  Doc. 376, Opp. to MIL re Dr. Trecki.  In the Government's opposition to the current motion *in limine*, it stated that, "[s]pecifically, [defense counsel] advised [the Government] that the defense is lack of knowledge — the defendant thought he was dealing with UR-144 (an analogue) and not AM-2201 (a scheduled substance)." *Id.*

5

This defense is clearly allowed under the Supreme Court's recent *McFadden* decision. In *McFadden*, the Court rejected the Government's then-proposed standard for proving knowledge in Controlled Substances Act cases (that the Government must merely prove that a defendant knew his conduct was illegal under <u>any</u> law) and ruled that when prosecuting a Controlled Substances Act case, the Government is required to establish that a defendant knew specifically that he was dealing with a substance that was illegal under the Controlled Substances Act or Analogue Enforcement Act:

> The Government agrees that the knowledge requirement in § 841(a)(1) applies to prosecutions involving controlled substance analogues, yet contends that it is met if the "defendant knew he was dealing with an illegal or regulated substance" under some law.  <u>Section 841(a)(1), however, requires that a defendant knew he was dealing with "a controlled substance</u>." That term includes only those drugs listed on the federal drug schedules or treated as such by operation of the Analogue Act. It is not broad enough to include all substances regulated by any law.

135 S. Ct. at 2306 (citations omitted) (emphasis added). In elaborating this test, the Court further explained that the Government could prove that a defendant had the requisite knowledge through either "direct evidence or circumstantial evidence[.]" *McFadden*, 135 S. Ct. at 2304 n.1. "Direct evidence could include . . . past arrests that put a defendant on notice of the controlled status of a substance," while "[c]ircumstantial evidence could include . . . a defendant's concealment of his activities, evasive behavior with respect to law enforcement, knowledge that a particular substance produces a 'high' similar to that produced by controlled substances, and knowledge that a particular substance is subject to seizure at customs." *Id*. In this particular case, if the Government cannot offer direct evidence that Mr. Al-Omari knew that the substance offered was a controlled substance, the Government would be able to offer indirect evidence to prove Mr. Al-Omari's knowledge, for example by offering that Mr. Al-Omari knew the specific identity of the

substance and that Mr. Al-Omari knew the pharmacological characteristics of a substance. *See id.*

As Chief Justice Roberts pointed out in his concurring opinion in *McFadden*, simply demonstrating that Mr. Al-Omari knew the identity of the substance in this case would be insufficient to support a finding by the jury that Mr. Al-Omari knew that substance was a controlled substance. *Id.* at 2307 (Roberts, C.J., concurring). As Chief Justice Robert explained, "[i]n cases involving well-known drugs such as heroin, a defendant's knowledge of the identity of the substance can be compelling evidence that he knows the substance is controlled. But that is not necessarily true for lesser known drugs." *Id.* at 2307. In cases involving lesser-known or newly scheduled drugs, "a defendant needs to know more than the identity of the substance; he needs to know that the substance is 'controlled[.]'" *Id.* (emphasis added). Recently, the Ninth Circuit suggested that the *McFadden* standard for establishing knowledge under the Controlled Substances Act would require some heightened scrutiny and nuanced application along the lines Chief Justice Roberts suggests. For example, in the case *United States v. Aquino*, the court stated: "Though we decline to expound on [the *McFadden*] standard, we note that Aquino's conduct could conceivably fall outside of it—as there is no evidence that she had knowledge of either the concept of a controlled substance analogue or the 'chemical structure' of the spice that she smoked." 794 F.3d 1033, 1038 n.4 (9th Cir. 2015); *see also United States v. Jefferson*, 791 F.3d 1013, 1023 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1473 (2016) (citing *McFadden* and rejecting the notion that a defendant may be found liable "by proving only that a defendant knew he violated the narcotics laws by importing some unspecified substance listed on the federal drug schedules.") (quotations omitted).

Courts within the Tenth Circuit have interpreted *McFadden* as applying this heightened *mens rea* requirement on the Government's case in cases involving the Controlled Substances Act and Analogue Enforcement Act. For example, in the case *United States v. Makkar,* the Tenth Circuit reprimanded the district court for its *mens rea* instruction, which was too lenient under *McFadden*. 810 F.3d 1139, 1142–44 (10th Cir. 2015) ("The Government sought and secured an ambitious mens rea instruction that just will not square with the text of the statute or *McFadden*."). Rather than accepting the jury instruction proposed by the Government, the Tenth Circuit offered the following language to guide the district court:

> When it comes to *mens rea* . . . the Government must show that the defendant *knew* the drug he possessed . . . (1) [was] substantially similar in chemical structure to a schedule I or II CSA controlled substance, and [was] intended to have[] an effect on the central nervous system that is substantially similar to that of a schedule I or II CSA controlled substance[,] or (2) was controlled by the CSA or Analogue Act.

*Id*. Under the Tenth Circuit precedent in *Makkar*, evidence of Mr. Al-Omari's knowledge regarding the pharmacological effects of AM-2201 seem not only relevant but potentially necessary to show Mr. Al-Omari's knowledge that AM-2201 was a controlled substance.

This interpretation is further supported by a recent case in the District of Kansas interpreting *Makkar* and *McFadden*, *United States v. Reulet*. No. 14-40005-DDC, 2016 WL 126355, (D. Kan. Jan. 11, 2016), *on reconsideration in part*, 2016 WL 191883 (D. Kan. Jan. 14, 2016). There, the District of Kansas denied the Government's motion to exclude arguments on ignorance of the law, mistake of law, and mistake of fact. It stated that it read "*McFadden* and *Makkar* to impose a burden on the Government to prove that defendants *knew* they possessed one of two things: (A) a substance that both was substantially similar in chemical structure to a controlled substance *and* had, or was represented or intended to have, a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to a controlled

8

substance; or (B) a substance that was controlled by the Controlled Substances Act (CSA) or Analogue Act." *Id.* at *4 (emphasis added). It therefore held that "evidence and argument that goes to either one of these two things is fair game." *Id.* The district court's opinion in *Reulet* informs the Court's decision here, indicating that the testimony may be not only relevant, but (depending on the other evidence offered by the Government) potentially necessary in order for the Government to present its case.

Other courts outside the Tenth Circuit have also offered similar interpretations of *McFadden*. For example, in *United States v. Ramos*, the Eighth Circuit took up the question of whether a district court's jury instructions in an Analogue Enforcement Act case adequately expressed the standard articulated in *McFadden*. 814 F.3d 910, 916–18 (8th Cir. 2016), *as corrected* (Feb. 23, 2016). In *Ramos*, the Eighth Circuit upheld a jury instruction that imposed a heightened, multi-part knowledge showing by the Government in a case involving the Analogue Enforcement Act.[3] *Ramos*, 814 F.3d at 918. The Eighth Circuit explained that the test under *McFadden* required that "the Government either must (1) show the defendant knew she was dealing with some controlled substance, regardless of whether she knew the identity of the substance, *or* (2) show that the defendant knew the specific features of the substance that make it

---

[3] The Eighth Circuit summarized the jury instruction as follows:

> The court's instructions at Mary's trial closely matched the second method of proving knowledge under *McFadden*. The court instructed the jury that the Government had to prove (1) that Mary knew that á-PVP was intended for human consumption and (2) that she knew (a) that the chemical structure of á-PVP is substantially similar to the chemical structure of a controlled substance in Schedule I or II and (b) that á-PVP either has or was represented by Mary to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system as a controlled substance in Schedule I or II.

*Ramos*, 814 F.3d at 918.

a controlled substance analogue." *Ramos*, 814 F.3d at 916.  The Eighth Circuit explained that knowledge regarding the specific features of the substance suffices under the Analogue Enforcement Act because a "defendant who possesses a substance with knowledge of those features knows all of the facts that make his conduct illegal, just as a defendant who knows he possesses heroin knows all of the facts that make his conduct illegal." *Ramos*, 814 F.3d at 916–18.

Several district courts have also offered interpretations of the knowledge standard applied by the Supreme Court in *McFadden* that further inform the Court's decision here.  In *United States v. Sharp*, the court considered the question of whether a plea agreement evinced sufficient knowledge on behalf of the defendant to justify the plea.  There, the "[d]efendant argue[d] that the knowledge element was not satisfied because he believed he possessed THJ-011 instead of AB-FUBINACA, and he did not believe THJ-011 to be a controlled substance or an analogue." *Sharp*, at *9.  The court determined that the *McFadden* test for knowledge was satisfied because:

> [The Government] elicited testimony from Defendant that he knew the substance in his possession caused "disorientation." Such "disorientation" is emblematic of a controlled substance analogue, which is in part defined by its effect on the nervous system. Further, the Government elicited testimony from Mr. Schwartz that the Government's discovery file included evidence that Defendant: (1) refused to store the substance in his shop because he was worried about being raided, (2) purchased the substance in emails bearing the subject line "AB-FUBINACA," (3) stored the substance in a locker that he rented under a pseudonym and (4) included "not for human consumption" labels on the substance's packaging despite his awareness that people would smoke the substance.

*Sharp*, at *9–*10 (citations omitted).  The court also considered relevant the fact that the defendant admitted "that he took deliberate action to avoid knowledge that the substance—whatever its name—was illegal. Therefore, a factual basis for Defendant's guilty pleas was established at the change of plea hearing." *Sharp*, at *10.  As a result of the substantial evidence

presented by the Government and the factors the court weighed in the *Sharp* case, it is unclear which facts the court in *Sharp* ultimately found sufficient. Regardless of the ultimately dispositive facts in *Sharp*, it is clear that the court found the defendant's evasive behavior and knowledge or lack of knowledge of the name, chemical structure, and pharmacological effects of the substance sold relevant. *Sharp*, at *9–*10.

In light of the precedent summarized above, this Court's concurrently published Amended Order Regarding the Government's Motion in Limine to Preclude Certain Commonly Pursued Defenses, Arguments and Related Evidence and Arguments,[4] and the views taken on *McFadden* in other courts, this Court adopts the Roberts concurrence in *McFadden* as controlling in this case. Namely, the Government is required to demonstrate that Mr. Al-Omari knew that he was selling AM-2201 and knew that AM-2201 was a controlled substance. *McFadden*, 135 S.

---

[4] In the concurrently published Order, this Court expressed its holding as follows:

> [T]his Court finds that in order to establish knowledge under the CSA [Controlled Substances Act], the Government must demonstrate that Defendant knew the substance was controlled. To allow the Government to establish knowledge merely by showing that Defendant knew the identity of the substance would fail to prove that Defendant knew the substance was controlled, because the substance at issue is "lesser known" as the Chief Justice describes.
> 
> As with most *mens rea* requirements, the Government can prove the requisite mental state through either direct or circumstantial evidence. *Id*. at 2304 n.1 (noting that courts of appeal allow direct and circumstantial evidence for establishing knowledge under the CSA). For example, the Government may introduce circumstantial evidence to show that Defendant knew the substance he possessed was AM-2201, that Defendant knew the substance produced certain pharmacological effects, and that Defendant engaged in evasive behavior in order to conceal his activities. Defendant may offer evidence to discredit the Government's presentation, including evidence that Defendant did not know he possessed AM-2201, but may not present arguments regarding Defendant's ignorance of the law. In sum, Defendant may not pursue ignorance of the law arguments, but may pursue mistake of fact arguments in defense of the Government's showing of *mens rea*.

Ct. at 2307 (Roberts, C.J., concurring) ("a defendant . . . . needs to know that the substance is controlled[.]"); *McFadden*, 135 S. Ct. at 2306 ("Section 841(a)(1), however, requires that a defendant knew he was dealing with 'a controlled substance.'").  The Government can prove this by demonstrating either that Mr. Al-Omari directly knew both of those facts, or that the defendant knew those facts by inference.  *Id.* at 2304 n.1 (allowing proof through "direct evidence or circumstantial evidence").  To prove that Mr. Al-Omari knew by inference that AM-2201 was a controlled substance, the Government in this case is required to prove more than that Mr. Al-Omari knew the chemical identity of AM-2201 when he sold it.  *McFadden*, 135 S. Ct. at 2307 (Roberts, C.J., concurring) (in cases involving lesser-known or newly scheduled drugs, "a defendant needs to know more than the identity of the substance[.]").  The Government must bolster this evidence by proving that Al-Omari had further indication that AM-2201 was controlled.  *Id.*  For example, the Government can offer evidence that Mr. Al-Omari appeared to be attempting to evade the law in selling the drug, that Mr. Al-Omari knew the effects of the drug were similar to the effects of other controlled substances (e.g. could get a user "high"), or that Mr. Al-Omari was aware of the chemical structure of AM-2201.  *See Sharp*, at \*9–\*10 (considering various types of evidence relevant under *McFadden*).

Because of the heightened burden of proof that the Government must bear in Controlled Substances Act cases following *McFadden*, Dr. Trecki's testimony regarding the pharmacological effects may be used to establish the effects of AM-2201 to help further the Government's case that Mr. Al-Omari was aware of those effects at the time period specified in the indictment.

## II.  Prejudicial Effect of Dr. Trecki's Proposed Testimony Regarding the Effects of AM-2201

While Dr. Trecki's testimony is relevant to satisfy the Government's burden of proof under the Controlled Substances Act, the Court remains concerned regarding some of the issues highlighted by Mr. Al-Omari's motion *in limine*. For example, testimony from Dr. Trecki stating that AM-2201, the substance allegedly sold by Mr. Al-Omari, might cause "self-induced lethal trauma" will certainly unduly prejudice the jury against Mr. Al-Omari. Moreover, unless the "self-induced lethal trauma" was one of the effects prompting the Government to place AM-2201 on a schedule under the Controlled Substances Act as well as an effect that Mr. Al-Omari was aware of, it is not relevant to prove Mr. Al-Omari's knowledge. *McFadden*, 135 S. Ct. at 2306. Furthermore, given all the other, more relevant effects of AM-2201 for purposes of the indictment – namely that AM-2201 gets the user "high" – this sort of testimony is needlessly cumulative for the Government to sustain its burden. *See United States v. Awad*, No. CR 15-78, 2016 WL 492146, at *2 (D. Minn. Jan. 19, 2016), *report and recommendation adopted sub nom. United States v. Brik*, 2016 WL 475170 (D. Minn. Feb. 8, 2016) (finding evidence that the drug sold by the defendant gets the user "high" relevant under *McFadden*).

Accordingly, because the Court finds that Dr. Trecki's testimony regarding the effects of AM-2201 is relevant to the Controlled Substances Act counts of the indictment, the Court is denying Mr. Al-Omari's motion at this time. However, given how critical this matter is to both parties and the unforeseeable nature of the testimony that may be elicited on both direct and cross-examination, the Court will allow counsel to present specific objections to questions asked and evidence presented on this matter during trial and will rule on those objections when raised.

### III.     Dr. Trecki's Proposed Testimony Regarding the Scheduling of a Controlled Substance

In addition to the Government's proposed testimony from Dr. Trecki regarding the effects of AM-2201, Mr. Al-Omari also seeks to preclude testimony from Dr. Trecki regarding the scheduling process in general and the scheduling of AM-2201 in particular. Mr. Al-Omari argues that this testimony is irrelevant, improper expert opinion, and an improper legal opinion. Doc. 379, Reply ISO MIL re Dr. Trecki, at 4.

A. Relevance Objections to the Scheduling Testimony

The Government asserts that this testimony is relevant because it anticipates that Mr. Al-Omari will attempt to argue that he believed selling AM-2201 was at some point legal as part of his defense that Mr. Al-Omari did meet the requisite knowledge standard under the Controlled Substances Act and *McFadden*. Doc. 376, Opp. to MIL re Dr. Trecki ("the scheduling process is relevant because it coincides and overlaps with the defendant's conduct in this case and will help foreclose any jury confusion as to the propriety of the United States conduct or the 'legality' of the defense's conduct."). However, contrary to the Government's assertion, *McFadden* explicitly rejected the possibility that simple proof of a defendant's knowledge of illegal conduct was sufficient to uphold a conviction under the Controlled Substances Act. 135 S. Ct. at 2306. This was exactly the Government's position it presented to the Supreme Court in *McFadden*, which the Supreme Court rejected. *Id.* ("Section 841(a)(1) . . . requires that a defendant knew he was dealing with 'a controlled substance.' That term includes only those drugs listed on the federal drug schedules or treated as such by operation of the Analogue Act. It is not broad enough to include all substances regulated by any law.").

Despite the Government's understandable confusion regarding the relevance of Dr.

Trecki's testimony to the Government's burden of proof, Dr. Trecki's testimony regarding the scheduling process may prove relevant in other regards. For example, it may help provide the foundation for Dr. Trecki's testimony regarding his testing of AM-2201, *see* FED. R. EVID. 702(b), or may help the Government explain how Mr. Al-Omari would have otherwise been aware that AM-2201 was a controlled substance during the time specified in the indictment. Resultantly, the Court rejects Mr. Al-Omari's blanket relevance objection to this testimony at this time, but will not preclude Mr. Al-Omari from raising the same objection to specific elements of Dr. Trecki's testimony at trial.

B. Notice Objections to the Scheduling Testimony

In response to Mr. Al-Omari's objections to Dr. Trecki's testimony regarding the scheduling of AM-2201 as improper expert testimony inadequately noticed, the Government asserts that Dr. Trecki's testimony in this matter is lay witness testimony rather than expert testimony. In particular, because Dr. Trecki was involved in the scheduling of AM-2201, the Government asserts that Dr. Trecki was a percipient witness under Federal Rule of Evidence 701 and is therefore not subject to the notice requirements contained in Federal Rule of Evidence 702. Doc. 376, Opp. to MIL re Dr. Trecki, at 5–6. The Government offers no law for this proposition. Contrary to the Government's argument, under the third factor articulated in Federal Rule of Evidence 701, if the witness's first-hand perceptions are nevertheless "based on scientific, technical, or other specialized knowledge within the scope of Rule 702" it cannot be considered lay-witness testimony. FED. R. EVID. 701(c) & cmt to the 2000 Amendments ("The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the

standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules."). Whether Dr. Trecki was actually involved in creating the schedule under the Controlled Substances Act or not, his involvement was as a scientist specializing in the identification of synthetic drugs, precisely the area of expertise for which the Government plans to call Dr. Trecki under Rule 702. Doc. 312-1, Dr. Trecki Rule 16 Disclosure, at 26. However, despite Dr. Trecki's undeniable status as an expert witness, the Court finds that Mr. Al-Omari has been given adequate notice of this testimony. In Dr. Trecki's Rule 16 Disclosure, Dr. Trecki is generally identified as an expert on the scheduling of synthetic drugs like AM-2201. Doc. 312-1, Dr. Trecki Rule 16 Disclosure, at 17–48. It is presupposed by Dr. Trecki's area of expertise that he would have the knowledge regarding how a drug is scheduled under both the Analogue Act and the Controlled Substances Act. As Mr. Al-Omari stated in his motion, he is not challenging the basis of this expertise. Doc. 371, MIL re Dr. Trecki, at 3.[5]

C. Legal Opinion Objections to the Scheduling Testimony

Mr. Al-Omari's argument that Dr. Trecki may not offer legal opinions is well taken. Doc. 379, Reply ISO MIL re Dr. Trecki, at 4 ("To the extent that [Dr. Trecki] intends to testify regarding the legal basis for scheduling a substance, such testimony would likely be expert legal testimony."). It is this Court's sole responsibility, and not the responsibility of the parties or their experts, to explain the law to the jury. *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule."). Attempts by parties other than the Court to interpret or express the law to the jury are improper. *See*

---

[5] The Court also notes that Mr. Al-Omari was informed of the potential testimony in court during its May 11, 2016 hearing.

LAFAVE, ISRAEL, KING & KERR, CRIMINAL PROCEDURE § 24.7(e) (4th ed. 2015) ("While the parties may "anticipate jury instructions and tie the facts of the case to the elements of the law . . . misrepresentations of the law constitute improper argument.").

## CONCLUSION

The Government will not be allowed to present any testimony from Dr. Trecki interpreting or explaining the law. For the reasons set forth above, none of the other proposed testimony by Dr. Trecki will be barred at this time. However, this Order shall not preclude Mr. Al-Omari from raising specific objections to Dr. Trecki's testimony at trial, including the objections expressed in Mr. Al-Omari's motion *in limine*.

**IT IS THEREFORE ORDERED** that Defendant's Motion *in limine* to Limit Testimony of Jordon Trecki, PhD [Doc. 371], **IS GRANTED IN PART AND DENIED IN PART**.

Dated this 3rd day of June, 2016.

                                                                            **MARTHA VAZQUEZ**
                                                                            UNITED STATES DISTRICT JUDGE